UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN S. GARRETSON,<br><br>  Plaintiff,<br><br>  v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>  Defendant. | Case No. 17-cv-07052-JD<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiff Steven S. Garretson brought this ERISA action for long-term disability ("LTD") benefits under a group insurance policy. The policy was issued by defendant Metropolitan Life Insurance Company ("MetLife") to non-party Kaiser Foundation Health Plan, Inc., Garretson's former employer. MetLife initially determined that Garretson was disabled and began paying him benefits effective March 14, 2015, but terminated his coverage on April 28, 2017. Garretson appealed the termination to MetLife, but MetLife denied the appeal.

Pending is Garretson's motion for judgment. Dkt. No. 32. Garretson and MetLife agree that a de novo standard of review applies to MetLife's termination of Garretson's claim. Dkt. No. 32 at 12-13; Dkt. No. 38 at 19. The Court consequently conducts at the parties' joint request a "bench trial on [the] records" to determine "whether [Garretson] is disabled within the terms of the policy," and issues these findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a). *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999).

**FINDINGS OF FACT**

1.   Garretson is a 57-year-old man who worked as a project manager for Kaiser Permanente's information technology ("IT") department from April 2011 until September 15, 2014. Administrative Record ("AR") 68; AR 2950; AR 4468. He is also a former U.S. Army

paratrooper with the rank of Sergeant. AR 39; AR 2950. He continued to be an "activity driven person" after leaving the Army. AR 39.

2. As a project manager for Kaiser, he was required to "supervise individuals who manage projects and programs with IT, and manage large complex projects or multiple projects of moderate complexity." The job required, among other things, "sitting and using his head and neck in a static position 5-6 hours, . . . , standing, walking, . . . , and lifting up to 10 pounds occasionally." AR 4468; CR 1645.

3. Garretson was covered by a group disability income insurance policy issued to Kaiser by MetLife. Under the terms of the policy:

> Disability or Disabled means that as a result of Sickness or Injury You are either Totally Disabled or Partially Disabled.
>
> Totally Disabled or Total Disability means:
>
> During the Elimination Period and the next 24 months, You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation in the usual and customary way.
>
> After such period, You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your:
>
> - age;
> - education;
> - training;
> - experience;
> - station in life; and
> - physical and mental capacity
>
> that exists within any of the following locations:
>
> - a reasonable distance or travel time from Your residence in light of the commuting practices of Your community;
> - a distance of travel time equivalent to the distance or travel time You traveled to work before becoming disabled; or
> - the regional labor market, if You reside or resided prior to becoming disabled in a metropolitan area.

AR 3862.

4. In late 2008, Garretson fell into a hole at work. AR 1327; AR 40.

5. In February 2009, he was diagnosed with lumbar radiculopathy. An MRI of his lumbar spine showed "posterior disc bulging" and "the appearance of an annular tear," among other impairments. AR 1328.

6. In December 2012, Garretson had a disc replacement and spinal fusion. CR 1762-63; AR 3139. After the surgery, he "had severe and constant pain." AR 40; CR 1763 ("[P]ostoperatively he had continued radicular back pain that was not ameliorated by physical therapy or pharmacological pain management.").

7. Garretson tried an implanted spinal cord stimulator on January 27, 2014, but that resulted in "a negative trial with minimal improvement in pain and with a number of side effects. He was referred to a chronic pain management program and was treated pharmacologically using a variety of opioids (hydromorphone, methadone, morphine extended-release, oxycodone-acetaminophen, methadone), as well as interventional pain management, including sacroiliac and trigger point injections." CR 1763.

8. Garretson ceased work on September 15, 2014, and he filed with MetLife a claim for long-term disability benefits. AR 4468; AR 75. MetLife deemed him disabled as of September 15, 2014, and approved Garretson's LTD claim effective March 14, 2015. AR 75; AR 4468; AR 4472. According to MetLife, "[a]fter completion of the required elimination period, [Garretson's] LTD benefits became payable effective March 14, 2015, as he was considered Totally Disabled from performing his usual occupation. . . . At the time [Garretson] ceased work, he was disabled due to chronic low back pain and lumbar radiculopathy." AR 75.

9. On February 15, 2017, MetLife sent Garretson a letter advising him that his claim was "in review to determine if he satisfied the Plan's definition of disability" but that "MetLife would pay benefits in good faith while reviewing his claim." AR 4468.

10. Dr. Linda M. Choe and Dr. Cassandra L. Whitmore are Garretson's primary physicians. CR 1773. Dr. Choe is a Director of the Spine Clinic at The Permanente Group in Vallejo, and Dr. Whitmore is a pain management specialist at Kaiser. CR 1773; CR 1782. Dr. Choe has been Garretson's treating physician since 2010. CR 1782. Together, Drs. Choe and

Whitmore have been "the responsible specialist physicians coordinating and reviewing all of Mr. Garretson's medical care for years." CR 1773.

11. A report by Dr. Whitmore dated March 16, 2017, "indicated that the diagnosis was chronic pain." CR 1651.

12. MetLife arranged for a covert surveillance of Garretson's house but observed no activity by him on February 28, 2017, or March 1, 2017. AR 2502-03.

13. David S. Peters, M.D., a senior medical director for MetLife, produced a "Medical Director File Review" on March 16, 2017. The document stated that "[o]ffice visit notes, correspondence, the job description and diagnostic reports were reviewed." It noted that "the fact that [Garretson] had a lumbar fusion and subsequent SCS supports the presence of significant symptoms. The EMG/NCS is abnormal as well." The one-page review concluded -- after mentioning the absence of "recent clinical or imaging findings to support the presence of current nerve root or spinal cord compression" -- that "[l]imited, fulltime (8 hours daily) work should be possible, in my opinion, while continuing evaluation and treatment of his condition." AR 47.

14. MetLife continued to pay Garretson benefits through April 28, 2017, but in a letter on that date, MetLife advised him that it had terminated his LTD coverage because its medical director had "opined" that Garretson "should be able to perform a full-time, 8 hours work day with limitation." AR 61. MetLife's letter stated that, "[b]ased on [Garretson's] reported education, training and experience and his ability to work at sedentary level capacity, it was determined that [he] is able to perform his Usual Occupation as Project Management Consultant/Specialist." The letter also found that Garretson was "qualified" for other jobs such as "Manager, Professional Equipment Sales & Services," "Manager Procurement Services," and "Project Director." MetLife concluded that, "[a]lthough the medical records support some functional limitation, they do not preclude [Garretson] from his own usual occupation or other gainful occupations which exist in his local economy. . . . Therefore, [Garretson's] benefits will terminate effective April 29, 2017." AR 61-62.

15. Through a letter from his counsel to MetLife dated May 22, 2017, Garretson appealed the "termination of his insurance benefits and request[ed] a full and fair review of that termination." AR 51; AR 94 (MetLife letter acknowledging receipt).

16. On August 24, 2017, the Social Security Administration granted Garretson's claim for Social Security Disability Insurance (SSDI) benefits, awarding him benefits retroactive to September 15, 2014. AR 65; AR 5216-23. The administrative law judge concluded that "the claimant has been disabled under section 216(i) and 223(d) of the Social Security Act since September 15, 2014." AR 5223.

17. On September 12, 2017, Dr. Choe wrote a letter to Garretson's counsel stating her "considered opinion" that "it is beyond reasonable professional dispute that Mr. Garretson is physically incapable of working satisfactorily in even a sedentary occupation, as opposed to occasional or sporadic work from home." She also stated that "nothing has changed significantly for the better for Mr. Garretson." "He continues to suffer from virtually constant and debilitating pain radiating from his lower back down through his leg and buttocks. He consistently experiences either burning or cold sensations in his feet, numbness in his left foot, and back spasms, among other things. . . . It is difficult to imagine that someone in this condition could work satisfactorily through a work week or perhaps even a work day on a consistent and sustained basis." Dr. Choe also opined that "[t]here is no clinical evidence that Mr. Garretson (who is a military veteran) is exaggerating any of his symptoms," and it was her "unequivocal professional belief that he is neither doing so, nor is he 'overly sensitive' to pain. . . . If anything, I believe he is under-reporting his day-to-day pain." Dr. Choe stated that cases such as Garretson's are not uncommon, and occur often enough "that one commonly hears the terms 'post-laminectomy syndrome' or 'failed back syndrome.'" AR 44-45.

18. Garretson's wife, Hilda Garretson, wrote in a letter dated October 3, 2017, that when Garretson "gets out of bed, he has nerve pain when his feet first touch the floor, as if they were burning or he has a pin-needle stabbing feeling." His feet "hurt to stand on," and his "[s]howering and using the bathroom are slow and unsteady." On the occasions when he accompanies his wife to the supermarket, attends a monthly homeowner's association meeting, or

5

goes out to lunch or dinner for a special occasion, "afterwards he either has excruciating pain, or he is so exhausted that he is bed-ridden for [a] couple of days." AR 42.

19. Letters from Garretson's son, Roberto Garretson, and Garretson's former co-worker, Ja Nell Beeson, were submitted to MetLife on October 20, 2017. AR 36-37. Beeson's letter described how she "could see that Steve was struggling. I could see the pain in his eyes, the way he was twisting his mouth as we were talking. . . . Several times I saw him at his desk (when he was able to come in) gritting his teeth or gripping the desk with sweat beading up on his forehead. . . . I've known Steve for a long time and my first thought when I saw him struggling was that the pain was sucking the life out of him, it was consuming his life." AR 71. Roberto Garretson's letter stated that his father "cannot sit in a chair for more than twenty minutes without managing what appears to be immense amounts of pain." AR 64.

20. Dr. Germaine N. Rowe is a physician advisor for MetLife. Dr. Rowe's December 4, 2017 report contains these notes of a teleconference with Dr. Whitmore: "Dr. Cassandra Whitmore told me he could work from home if he had the proper setup to accommodate him." CR 1643. The report also noted Dr. Whitmore's comments that while the "claimant was in some respects functional[ly] impaired," he "had issues with bursitis and fewer with chronic pain" and was "more stable presently." Dr. Rowe's report further stated, "Dr. Cassandra Whitmore told me claimant has in the last year had more issues with back and sciatica, but last visit claimant was upbeat and pain was managed well." CR 1643. Dr. Rowe's report concluded that, "for the time period under review, the medical records did not provide clear clinical evidence to support functional limitations. It is unclear that the pain severity indicated on the Visual Analogue Scale (VAS) is due to his physical condition or due to psychological deficits (such as anxiety and depression) which is not my area of expertise. Also, there are no objective provocative test findings available to indicate the severity of the claimant's condition. Further, the imaging reports do not reveal the severe findings which support the impairment. Moreover, the claimant had radicular pain that comes under neurology which is not my area of expertise. There are no recent or current medical records available to determine the claimant's condition. Therefore, from the

perspective of Pain Medicine/Physical Medicine & Rehabilitation, the functional restrictions and limitations are not supported. The claimant can work full time." CR 1657.

21. Another doctor working for MetLife, Dr. Jon Glass, produced a report dated January 4, 2018. The report indicates that Dr. Glass is board-certified in neurology, and at MetLife's request, he reviewed and considered Garretson's records. Dr. Glass noted that the "most recent pain management notes was [*sic*] dated 2/24/17. At that time Mr. Garretson saw Cassandra Whitmore, MD. Complaints were of low back and leg pain improved with physical activities. . . . Diagnosis on that date was of trochanteric bursitis, . . . , and lumbar radiculopathy. He was noted to have no improvement with venlafaxine, nortriptyline, or Neurontin." CR 1763. Dr. Glass concluded, "As of 3/14/17 there are functional limitations due to physical condition (failed back syndrome, chronic lumbosacral radiculopathy). He has a history of chronic lumbar degenerative disease with continued medically refractory radicular pain despite multiple attempts to pharmacological therapy and interventional therapies. Status as of 3/14/17 is reflected in the 2/24/17 note from Cassandra Whitmore, MD, (Internal Medicine/Pain Management). Mr. Garretson is able to work in an eight-hour day and five-day/40-hour workweek with the following restrictions/limitations." The limitations that followed included, "Stand: 2 hours per 8-hour workday, 15 minutes at a time," and "Walk: 2 hours per 8-hour workday, 15 minutes at a time." CR 1765.

22. A February 23, 2018 report by Dr. Rowe stated: "Medical records covering the review period as of 2/1/17 - report dated 2/21/17 indicated that the diagnoses were chronic pain, cervical radiculopathy and lumbar radiculopathy. On 2/24/17, the diagnoses were bursitis of left trochanteric bursa, lumbar radiculopathy and chronic pain. He had pain with heat and elevation of legs which was less mobile as he could not handle walking extended periods of times. He had pain in the lower back and legs which rated at 7/10. . . . Examination revealed limited range of motion due to pain." CR 1759. Dr. Rowe nevertheless concluded that "[t]he medical information does not support functional limitations due to a physical condition or combination of physical conditions as of 02/16/17." CR 1759.

23. A February 27, 2018 report by Dr. Glass again recommended restrictions for Garretson "based on an 8-hour day and a 5-day/40-hour workweek," including, "Stand: 2 hours per 8-hour workday, 15 minutes at a time," and "Walk: 2 hours per 8-hour workday, 15 minutes at a time." CR 1769. On March 13, 2018, Dr. Glass clarified in a letter to MetLife that "[t]he patient may sit for 8 hours per day for 8-hour workday without restriction." CR 1771. The letter did not contain any explanation of how he came to this conclusion.

24. A May 17, 2018 report by Dr. Rowe stated, "apart from the surgery dated 12/27/12, the medical records do not reveal the severity of the claimant's condition." "Pain can be a common symptom, and sometimes a good indicator of reported issues with mental health, which should be addressed independently." "[T]he pain levels indicated on the Visual Analogue Scale (VAS) was not consistent with reported objective evidence. . . . No results of current imaging were provided to confirm severe pathology or progression of symptoms." AR 4549.

25. On June 11, 2018, Dr. Choe wrote a letter to Garretson's counsel: "Mr. Garretson suffers from severe and intractable back pain and radiculopathy following two spinal surgeries, a microdiscectomy in 2009 and a more extensive lumbar fusion and total disc replacement surgery in 2012." CR 1784. "Since the 2012 surgery, Mr. Garretson has had no choice [but] to try to reduce his pain with narcotic medications, although they give him only partial pain relief. He has also undergone trials of electronic stimulation and sacral joint injections. These have also yielded only limited relief. [¶] It continues to be my professional opinion and assessment that Mr. Garretson's chronic and intractable chronic pain leaves him unable to perform either his own sedentary occupation or any other gainful occupation. There seems to be no genuine question about this. He cannot on a consistent basis sit for more than an hour without unsustainable increases in his back pain and exacerbation of pain and numbness extending through his leg. His pain is managed, to some extent, by opioid medications which necessarily impair his ability to focus on work tasks in a consistent or satisfactory fashion, among other common cognitive effects." CR 1786. Dr. Choe responded to Dr. Rowe as follows: "Dr. Rowe's characterization is completely belied by Mr. Garretson's extensive medical records. It is chronic pain, and not bursitis, that has been the medical issue, and the reason, for example, that Drs. Sonu and Bain

8

performed surgeries on Mr. Garretson." CR 1787. As for Dr. Glass, Dr. Choe wrote: "Dr. Glass' report offers no medical basis or reasoning for those specifications. He was neither asked to examine Mr. Garretson nor has he had any opportunity to make any clinical observations of how Mr. Garretson walks or stands." CR 1789.

26. Dr. Whitmore also wrote a letter to Garretson's counsel on June 20, 2018. She stated, "I concur completely with Dr. Choe's comments regarding Dr. Rowe's report. Mr. Garretson's primary medical issue is his intractable chronic pain[.] . . . Dr. Rowe's signed report says that 'Dr. Cassandra Whitmore told me he [Mr. Garretson] could work from home if he had the proper setup to accommodate him.' This misstates my views. Mr. Garretson is not advised to *refrain* from trying to do work at home, if he can manage to do productive work from time to time. However, given his medical condition and his prescribed medications, it is unlikely that he could find himself actually able to do so satisfactorily or consistently." CR 1810-11.

27. A June 22, 2018 report by Dr. Rowe stated, "Based on the medical records previously provided for my review and based on the additional documentation, the documentation did not provide clear clinical evidence to support functional limitations. The claimant had anxiety and depression. . . . Therefore, from the perspective of Pain Medicine/Physical Medicine & Rehabilitation, the response and opinion of the treating provider does not alter my prior opinion [i.e. the medical information does not support functional limitations due to a physical condition or combination of physical conditions as of 02/16/17 as well as the VAS results does not support any restrictions and limitations (R/L's)]." AR 4506.

28. A July 11, 2018 report by Dr. Rowe stated that the June 20, 2018 letter from Dr. Whitmore "does not alter my prior opinion." AR 4486. Dr. Rowe went on to say, "[T]he documentation did not provide clear clinical evidence to support functional limitations. There are no significant subjective as well as objective findings to determine the severity of the claimant's condition. . . . There was no additional clinical evidence provided, including any objective provocative test findings supporting the severity of the claimant's condition. Further, no new imaging report provided [*sic*]." AR 4487.

29. Dr. Glass also confirmed on July 13, 2018, that "[f]rom a neurological standpoint, it was my previous opinion that the patient has radicular pain without any significant objective correlates. There is no information to change the prior opinion." AR 4489.

30. On July 27, 2018, MetLife denied Garretson's appeal and upheld its April 2017 termination of his LTD claim. MetLife concluded that "on appeal we have determined that the medical information supported restrictions and limitations due [to] failed back syndrome and chronic lumbosacral radiculopathy, however the restrictions and limitations do not preclude Mr. Garretson from performing his job, a subset of his Usual Occupation. Therefore, Mr. Garretson no longer met the definition of disability and on appeal we have determined that the original claim determination to terminate benefits was appropriate." AR 4472.

## CONCLUSIONS OF LAW

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), and there is no dispute that the MetLife policy at issue is an ERISA plan. Under ERISA, a plan participant may bring a civil action to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

By agreement of the parties, MetLife's denial of Garretson's claim for benefits is subject to de novo review. Dkt. No. 32 at 12-13; Dkt. No. 38 at 19. Where "de novo review applies, the court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (internal quotation omitted). The claimant has the "burden of proving by a preponderance of the evidence that he was disabled under the terms of the plan." *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016). The Court determines the claimant's entitlement to benefits "based on the evidence in the administrative record and 'other evidence as might be admissible under the restrictive rule'" set out in our circuit's precedents. *Opeta*, 484 F.3d at 1217 (citation omitted). Here, the Court concludes that it need not consider any extra-record evidence, and disregards the document submitted as Dkt. No. 46-5. The parties also appear to agree that it need not be considered. Dkt. Nos. 48, 49.

1  The parties also do not dispute that Garretson was disabled under the MetLife policy from September 15, 2014, through April 2017. The only question is whether he continued to be disabled under the policy after that date. Having carefully reviewed and considered the administrative record, the Court concludes that Garretson was disabled.

Garretson's primary physicians, Drs. Choe and Whitmore, who have been treating Garretson together for years, wrote numerous letters to this effect. Dr. Choe wrote on September 12, 2017, that "Mr. Garretson is physically incapable of working satisfactorily in even a sedentary occupation, as opposed to occasional or sporadic work from home." AR 44-45. She wrote on June 11, 2018, that "Mr. Garretson suffers from severe and intractable back pain" which "leaves him unable to perform either his own sedentary occupation or any other gainful occupation. . . . He cannot on a consistent basis sit for more than an hour without unsustainable increases in his back pain and exacerbation of pain and numbness extending through his leg." CR 1786. Dr. Whitmore opined in a letter dated June 20, 2018, that "Mr. Garretson is not advised to *refrain* from trying to do work at home, if he can manage to do productive work from time to time. However, given his medical condition and his prescribed medications, it is unlikely that he could find himself actually able to do so satisfactorily or consistently." CR 1810-11. While treating physicians are not due any special deference in the ERISA context, the claimant's reliable evidence must nevertheless be credited. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003). There is no indication that the letters and opinions of Drs. Choe and Whitmore are not reliable.

The medical opinions of his treating physicians are corroborated by the statements of those who know Garretson well and observed him in person during the relevant time period. His wife stated in a letter dated October 3, 2017, that his "[s]howering and using the bathroom are slow and unsteady," and after he goes out to lunch or dinner on a special occasion, he "either has excruciating pain, or he is so exhausted that he is bed-ridden for a couple of days." AR 42. His former co-worker, who has "known Steve for a long time," observed Garretson "struggling. I could see the pain in his eyes, the way he was twisting his mouth as we were talking." AR 71. The times the co-worker saw Garretson at his desk, he was seen "gritting his teeth or gripping the

11

desk with sweat beading up on his forehead." AR 71. Garretson's son further stated that his father "cannot sit in a chair for more than twenty minutes without managing what appears to be immense amounts of pain." AR 64.

On the other side are three doctors who were hired by MetLife: Drs. Peters, Rowe, and Glass. There are many issues with these doctors' reports and conclusions. Chief among them is that none of these doctors ever even met Garretson in person, let alone examined him. As in *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011), "every doctor who personally examined [Garretson] concluded that he was disabled." And "[t]he only documents with an 'M.D.' on the signature line concluding that he was not disabled were by the physicians the insurance company paid to review his file. They never saw" Garretson. *Id*. Here, as in *Salomaa*, "[t]he medical record by physicians who actually examined [Garretson] is entirely one sided in favor of" his claim. *Id*.

The MetLife doctors' reports suffer from other deficiencies. Dr. Peters' one-page report noted "the presence of significant symptoms" and an "abnormal" test result, yet nevertheless jumped to the conclusion that Garretson was capable of "fulltime (8 hours daily) work." AR 47. That does not follow. Dr. Rowe's reports contain speculation that Garretson's experience of pain may be "due to psychological deficits (such as anxiety and depression)," but the doctor backs away from that suggestion, conceding, "that is not my area of expertise." CR 1657. Dr. Rowe further faults Garretson for not having "objective provocative test findings . . . to indicate the severity of the claimant's condition," *id*., but the plan administrator may not "demand[] objective tests to establish the existence of a condition for which there are no objective tests." *Salomaa*, 642 F.3d at 676. "Many medical conditions depend for their diagnosis on patient reports of pain or other symptoms." *Id*. at 678. Chronic pain is one of them.

Dr. Glass, like Dr. Peters, notes factors that are favorable to Garretson's claim, such as that he had "no improvement" with medications and that he "has a history of chronic lumbar degenerative disease with continued medically refractory radicular pain despite multiple attempts to pharmacological therapy and interventional therapies." CR 1765. Nevertheless, Dr. Glass too jumps to the punchline that "Mr. Garretson is able to work in an eight-hour day and five-day/40-

hour workweek" with certain limitations. *Id.* And without ever having met or examined Garretson, Dr. Glass dictates very specific limitations, such as that Garretson can stand "2 hours per 8-hour workday, 15 minutes at a time," CR 1765, and that he "may sit for 8 hours per day for 8-hour workday without restriction." CR 1771. These conclusions are cursory, contradictory to the evidence in the record that Dr. Glass himself noted, and not at all persuasive.

It is also not insignificant that Garretson was awarded SSDI benefits, with a finding that he has been disabled under the Social Security Act since September 15, 2014. AR 65; AR 5216-23. "Social Security disability awards do not bind plan administrators, but they are evidence of disability." *Salomaa*, 642 F.3d at 679.

The Court finds that Garretson has carried his burden of proving, by a preponderance of the evidence, that he continued to be disabled under his LTD policy after his benefits were terminated by MetLife. There is detailed and persuasive evidence in the record that Garretson suffers from near-constant, very severe pain. His treating physician of almost a decade attested to his "virtually constant and debilitating pain." AR 44-45. His wife described that even his "[s]howering and using the bathroom are slow and unsteady." AR 42. His co-worker observed him at his desk, "gritting his teeth or gripping the desk with sweat beading up on his forehead." AR 71. His son described Garretson as being unable to "sit in a chair for more than twenty minutes without managing what appears to be immense amounts of pain." AR 64. Garretson has consequently established that, at minimum, he is not capable of sitting for more than four hours, and our circuit has upheld the "commonsense conclusion . . . that an employee who cannot sit for more than four hours in an eight-hour workday cannot perform 'sedentary' work that requires 'sitting most of the time.'" *Armani*, 840 F.3d at 1163.

Garretson is thus not able to perform his own occupation, any of the other sedentary occupations identified by MetLife in its April 28, 2017 letter to Garretson, or any other, like occupations.

//

//

//

13

**CONCLUSION**

Garretson's motion for judgment is granted. The parties are directed to meet and confer on the amount of benefits due to Garretson, and to submit by December 13, 2019, a stipulation for the Court's approval.

**IT IS SO ORDERED.**

Dated: November 27, 2019

_____
JAMES DONATO
United States District Judge